FOLEY et al., Appellants v. CITY OF YANKTON, Respondent

(230 N.W.2d 476)

(File No. 11395. Opinion filed June 12, 1975)

Petition for rehearing denied July 18, 1975

Everett A. Bogue of Bogue, Weeks & Rusch, Vermillion, for plaintiffs and appellants.

James T. Goetz of Goetz, Hirsch, Haar & Blackburn, Yankton, for defendant and respondent.

DUNN, Chief Justice.

The plaintiffs in their amended complaint sought to prohibit the defendant city from making·any further deposits of refuse, debris or garbage upon or near the north embankment of an arm or chute of the Missouri River between Rush Island, owned by plaintiffs, and the defendant's land (Lot 4) which had been used as a dump ground since 1939; they also sought a mandatory injunction requiring the city to remove from this arm of the Missouri River above described any and all refuse, garbage, debris or material allegedly deposited there by the defendant in the past. The trial court denied the request for a mandatory injunction, but it did enjoin the city from making any further deposits in the area described. Plaintiffs appeal from that part of the judgment denying a mandatory injunction. We affirm.

The defendant city has owned and operated a dump ground upon Lot 4 and accretion thereto in Section 16, Township 93, Range 55, Yankton County, South Dakota, since 1939. Originally, Lot 4 was bounded by the main channel of the Missouri River. Due to the meandering of the river, Rush Island, which was once on the Nebraska side of the river, grew from 140 acres in size to 994 acres at the time of trial, and the main channel of the river changed to the south side of this island, leaving only what was variously described in the evidence as an arm or chute of the river or a slough to the north of Rush Island and south of defendant's Lot 4.

Plaintiff Isaak became an owner of Rush Island in 1955, and plaintiff Foley purchased a one-half interest in the island in 1966. In approximately 1956 an earthen road or causeway was constructed by plaintiff Isaak at the west end of defendant's Lot 4 through the arm of the Missouri River to Rush Island. A forty-inch culvert was inserted in the causeway to permit the flow of water easterly through this arm of the Missouri River. This causeway was built by moving earth across the chute, and it was built without any stabilizing factors, such as cement, pilings or rip-rap; it has stood in place since 1956 without washing out or eroding to any degree from the pressure of the water. These physical facts would challenge the testimony of Isaak and Foley that there was a moving stream 200' wide along the entire north

side of the island in 1957 and even as late as 1965. Testimony of the engineer appearing for plaintiffs indicated that this culvert would not handle the water if the arm of the river was cleared as requested by the mandatory injunction. Testimony and a view by the trial judge also indicated that trees and other debris often lodged in this culvert stopping or diminishing the water flow until it was cleared.

Neither of the plaintiffs complains that he has been deprived of any intended uses of Rush Island. They do complain that the effects of the past operation of the city dump restrict the flow of water in the stream between Lot 4 and Rush Island. They also claim that as a result of the city's actions the chute is no longer navigable and that they are further damaged in that it has detracted from the appearance of the property. The testimony and the aerial pictures indicate that there has been no change in the appearance of the area in the last fifteen years. The large aerial photo, defendant's Exhibit A in the record, taken on June 24, 1964, shows the area much as it exists today with little, if any, flow to the east of the earthen causeway. The City Manager of Yankton testified that there had been no dumping by or near the chute in the past few years, and that none was intended in the future.

The trial judge in viewing the premises on two occasions found some evidence of siltation in the constriction of the arm or chute. The testimony of the engineer and the aerial photos taken at different times also indicate a change in both river banks from the fine earth being deposited by running water, and the fact that Rush Island grew from 140 acres to 994 acres over the years would indicate siltation. The earthen causeway in constricting the flow from approximately a 200' body of water to forty inches would quite naturally result in siltation as the water was slowed down or stopped.

From these facts the trial court found that:

1. Possession of Rush Island by the plaintiffs was a sufficient interest on which to predicate injunctive relief from future dumping of debris.

2. The plaintiffs have always used Rush Island as in-

tended and were always able to carry out any intended farming operations.

3. Evidence failed to substantiate plaintiffs' allegation of infestation of rats and vermin.

4. One of the plaintiffs along with other prior owners had built a road across the chute, which road contained only a forty-inch culvert for the flow of water; that the culvert is periodically obstructed by logs and other debris, precluding a normal easterly flow of water through the chute; that said road was built without obtaining authority from anyone, and the installation and maintenance of the road is a major and causative factor in obstructing the flow of water which is complained of by plaintiffs.

5. The chute is not a navigable stream, largely because of the earthen road built by the plaintiff Isaak.

6. Various forms of refuse had been deposited by the city in the past on the north embankment of the arm or chute between Lot 4 and Rush Island, but little, if any, of this refuse was deposited subsequent to 1964.

7. It is impossible at this juncture to determine the relative degrees of causation between the building of the causeway, the dumping of refuse on the north bank and siltation.

8. Complying with the mandatory injunction requiring the city to widen the arm to 200' east of plaintiffs' causeway would cost in the neighborhood of $300,000.

The court then concluded that to require the city to carry out this difficult and expensive act in view of no clear finding as to the cause or relative causes of the narrowing of the stream was unjustified and inequitable and out of all proportion to any benefit to be derived by plaintiffs.

This case must first be considered in the light of SDCL 15-6-52(a) which states in part:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

We cannot conclude that the court's findings of fact are clearly erroneous under the evidence in this case. Instead, the findings are based on substantial and credible evidence.

The conclusion to grant an injunction against future dumping in the area but to refuse the mandatory injunctive relief seems to be based on sound judicial precedent. Mandatory injunction is a most extraordinary form of relief and its grant is not favored by the courts. Viestenz v. Arthur TP., 1952, 78 N.D. 1029, 54 N.W.2d 572. It is settled in this state that injunction is not granted as a matter of course. Its grant or refusal rests in the sound discretion of the trial court under the facts of each particular case, and, in exercising its discretion, the court may consider whether the granting of an injunction would operate inequitably or contrary to the real justice of the case. Losee v. Hettich, 1952, 74 S.D. 461, 54 N.W.2d 353; Parsons v. City of Sioux Falls, 1937, 65 S.D. 145, 272 N.W. 288. Thus, we are confronted with only the question of whether the failure of the court to grant the mandatory injunction was an abuse of this discretion.

A number of considerations guide the court in determining whether to grant the mandatory injunction. Initially, it is essential that plaintiff prove the causative link between the actions of the defendant and the injury complained of. In the instant case, the trial court was unable to find clear or even relative causation between the action of the city in dumping on the north bank, the natural siltation of a meandering river such as the Missouri, and the earthen causeway which had been built across the chute by one of the plaintiffs.

Another requirement is that the injury complained of be irreparable. Pradelt v. Lewis, 1921, 297 Ill. 374, 130 N.E. 785, 14 A.L.R. 828. Furthermore, the court should consider the doctrine of balancing equities. This doctrine has also been referred to as the "relative hardship" or "balance of convenience" test. Kriener v. Turkey Valley Community School Dist., 1973,

Iowa, 212 N.W.2d 526; Graven v. Backus, 1968, N.D., 163 N.W.2d 320. This equitable doctrine encourages the denial of injunctive relief where the expense or hardship to be suffered by the defendant is disproportionate to the small benefit to be gained by the injured party. In other words, a court of equity will not countenance a greater injustice through the grant of mandatory injunction for what is, in reality, a compensable injury. Graven v. Backus, supra. Here, it would seem that the damages are not irreparable, and the cost of widening the arm east of the causeway is far in excess of any benefit to be derived by plaintiffs. Plaintiffs did not establish that any intended uses of their property are frustrated by the present condition of the chute and thus any inconvenience or diminishment in value would seem susceptible to a finding of money damages. In fact, until the complaint was amended, plaintiffs did seek money damages instead of mandatory injunctive relief.

An additional factor that the court should consider is the state of mind of the party against whom the mandatory injunction is sought. Innocent mistake on defendant's part has been held to justify application of the "relative hardship" test. Graven v. Backus, supra. And it has been said that the court will not balance equities where the actions of the defendant were taken wilfully and with full knowledge of plaintiff's rights and the consequences which might ensue. Wilson Concrete Company v. County of Sarpy, 1972, 189 Neb. 312, 202 N.W.2d 597. Plaintiffs have not established such a state of mind. The record is generally silent as to any complaints or notice until the first action filed by the plaintiffs in 1966, which action was later dismissed. The trial court found as a fact that there had been little or no dumping on the north bank of the chute since 1964, and that the condition of the chute east of the causeway had not changed since that date. We need not decide whether wilful and intentional conduct by a defendant would prevent the application of the doctrine of balancing equities in all cases.

We cannot find that the trial court abused its discretion in denying a mandatory injunction under this record.

Affirmed.

All the Justices concur.