BROOKINGS MALL, INC., A Corporation, Plaintiff and Appellee,

v.

CPT. AHAB'S, LTD., A Corporation, d/b/a Cpt. Ahab's East Indies Cargo Co., Ltd., and d/b/a Iron Creek, Defendant and Appellant.

No. 13062.

Supreme Court of South Dakota.

Argued Oct. 23, 1980.

Decided Dec. 23, 1980.

Rehearing Denied Jan. 27, 1981.

James E. Kessler of Erickson & Kessler, P. C., Brookings, for plaintiff and appellee.

N. Dean Nasser, Jr., Sioux Falls, for defendant and appellant.

HENDERSON, Justice.

## ACTION

Appellant Captain Ahab's Ltd., d/b/a Captain Ahab's East Indies Cargo Co., Ltd. and Iron Creek, appeals from a judgment by the trial court permanently enjoining appellant from engaging in the sale of domestic records or tapes at its store unit located in the Brookings Mall Inc., appellee, in the city of Brookings, South Dakota. Four separate errors, appellant maintains, were committed by the trial court below. We disagree and affirm.

## FACTS

On November 25, 1974, appellant and appellee entered into a lease agreement whereby appellant would occupy a store unit located in the Brookings Mall in Brookings, South Dakota. Appellant commenced occupation of the unit on April 26, 1975. The lease expires January 31, 1981. Article V, Section 1 of the lease provides that the leased premises may be used and occupied only for the sale of imported goods, jewelry, water beds, potted plants, and related foreign and domestic items and for no other purpose or purposes without the written consent of the landlord (appellee). At the time the lease negotiations were occurring, there existed an operating CAPTAIN AHAB'S business in Sioux Falls, South Dakota, which was visited by a representative of appellee. The CAPTAIN AHAB'S in Sioux Falls did not sell records or tapes.

Appellant used and occupied the leased premises from April 26, 1975, to January of 1979 in essentially the manner prescribed in Article V, Section 1 of the lease. No trouble over the lease arose during this period of time.

On August 29, 1978, appellant (through Roger F. Ensenbach, its president) informed

appellee by letter that it planned to commence a going-out-of-business sale and re-open under the name IRON CREEK on December 1, 1978, at the leased premises. IRON CREEK is a name generally associated with the selling of records and tapes in South Dakota. On September 1, 1978, appellant received written notice from appellee that the selling of records and tapes at its Brookings Mall store unit would be a violation of Article V, Section 1 of the lease agreement, and would not be in the best interests of the shopping center.

Later, in September of 1978, Ensenbach met with Mark D. Norgaard (manager of appellee) at the Brookings Mall. At this meeting, Norgaard stated to Ensenbach that appellant could not sell records or tapes at the Brookings Mall. At trial, Ensenbach testified that, subsequent to Norgaard's initial objection, Norgaard seemed to be acquiescing to the idea of appellant selling records and tapes. According to Ensenbach, Norgaard asked him how many square feet of the store would be used for the selling of records and tapes. Ensenbach testified that after the meeting had concluded, he "felt it was okay for me to have a limited number of records in [the store]." This appears to be a self-serving, unilateral declaration.

Approximately January 1, 1979, appellant began doing business under the name IRON CREEK and began engaging in the retail sale of records and tapes. At this time, appellant began advertising through a local university newspaper and a Brookings radio station that it was in the record and tape business. On January 3, 1979, appellant received written notice from appellee that it would be a violation of its lease to sell records and tapes. Appellant again received written notice from appellee on January 18, 1979, stating that it would be a lease violation to sell records and tapes.

Prior to issuance of a preliminary injunction by the trial court, approximately forty percent of appellant's gross sales came from the sale of records and tapes. These records and tapes were not shown at trial to be imported. On January 31, 1979, appellee commenced its action against appellant seeking to enjoin appellant from violating Article V, Section 1 of the lease agreement regarding the sale of records and tapes at its store unit in the Brookings Mall.

## ISSUES

### I.

Did the trial court err in holding that Article V, Section 1 of the lease agreement was violated by appellant due to its sale of domestically produced records and tapes?

### II.

Did the trial court err in holding that appellee's refusal to consent to appellant's sale of domestically produced records and tapes was not unlawful?

### III.

Did the trial court err in holding that Article V, Section 1 of the lease agreement does not constitute an unreasonable restraint of trade?

### IV.

Did the trial court err in holding that a permanent injunction was a necessary and proper remedy under the facts involved?

Our holding is in the negative on all four issues and our rationale is discussed below.

## DECISION

### I.

Appellant contends that the trial court erred in holding that the sale of domestic records and tapes did not constitute the sale of "related and foreign and domestic items," as provided in Article V, Section 1 of the lease agreement. Article V, Section 1 of the lease states in pertinent part:

The leased premises may be used and occupied only for sale of imported goods, jewelry, water beds, potted plants and related foreign and domestic items (sub-

ject always to the provisions of Section 2 of this Article V) and for no other purpose or purposes without the written consent of LANDLORD.

■ Under the doctrines of 'ejusdem genesis' and 'noscitur a sociis,' the general words "related foreign and domestic items" do not entail domestic records and tapes when defined in context of the specifically enumerated items preceding it. Appellant does not contend that this interpretation is necessarily erroneous. Appellant does argue, however, that a parol contemporaneous agreement between the parties placed a construction on the lease which caused appellant to reasonably believe that it could sell records and tapes. Such a construction, contends appellant, should be found to be binding on the parties to the lease. In *Huffman v. Shevlin*, 76 S.D. 84, 89, 72 N.W.2d 852, 855 (1955), we stated:

> The primary rule in the construction of contracts is that the court must, if possible, ascertain and give effect to the mutual intention of the parties.... If the intention of the parties is not clear from the writing, then it is necessary and proper for the court to consider all the circumstances surrounding the execution of the writing and the subsequent acts of the parties.

We expressed in *Jensen v. Pure Plant Ford Int., Ltd.*, 274 N.W.2d 261, 263–264 (S.D. 1976), that:

> Parol or extrinsic evidence may not be admitted to vary the terms of a written instrument or to add to or detract from the writing. When the writing is uncertain or ambiguous, however, such evidence is admissible to explain the instrument. *Christiansen v. Strand*, 81 S.D. 187, 132 N.W.2d 386 (1965). "In other words, evidence is resorted to where the ambiguity may be dispelled to show what they meant by what they said, but not to show that the parties meant something other than what they said." *Id.* at 193, 132 N.W.2d at 389. "A contract is ambiguous when, after application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty exists

as to which of two or more meanings is the proper one." *Boyer v. Iowa High School Athletic Association*, 260 Iowa 1061, 1069, 152 N.W.2d 293, 298 (1967). And see *Piechowski v. Case*, 255 N.W.2d 72 (S.D.1977). Whether the language of a contract is ambiguous is ordinarily a question of law for the court. *Employers Liability Assur. Corp. v. Morse*, 261 Minn. 259, 111 N.W.2d 620 (1961).

■ Neither party objected to the admission of parol evidence at trial regarding the lease. This evidence was received to determine a proper construction of the lease. Appellant contends that there was an understanding between Ensenbach and Grootwassink (appellee's leasing agent when the lease was negotiated) that appellant would, or could, sell records and tapes. Ensenbach's interpretation stemmed from the fact that, immediately prior to the lease being signed, Grootwassink toured appellant's three stores located in Sioux Falls, one of which (operating under the name of IRON CREEK) sold records and tapes. SDCL 53-8-5, however, states: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Appellant is attempting to modify the lease by its belief in the existence of an oral understanding. We will not permit it to do so. The trial court found that appellee never consented to the sale of records and tapes by appellant. Such a finding is not clearly erroneous under the state of the record. SDCL 15-6-52(a); *Drake v. Sample*, 279 N.W.2d 685 (S.D.1979); *Cunningham v. Yankton Clinic, P.A.*, 262 N.W.2d 508 (S.D.1978).

■ Upon review of the evidence presented to the trial court in conjunction with appellant's contentions, we hold that the trial court did not err in holding that the sale of records and tapes by appellant did not constitute a sale of "related foreign and domestic items."

## II.

Appellant argues in the alternative that the trial court erred in ruling that appellee's refusal to consent to appellant's sale of records and tapes was lawful.

Article XIX of the lease states that the "LANDLORD agrees that whenever under this lease provision is made for TENANT securing the written consent of LANDLORD, such written consent shall not be unreasonably withheld." Appellant maintains that no good reason exists to preclude it from selling records and tapes at the Brookings Mall. It was established at trial that appellee refused to consent to appellant's selling records and tapes because of appellee's desire to not upset the mall's "tenant-mix."

Mr. Music Man, Inc., appears to be the only store in the mall which sells records and tapes as its primary source of income. It is stated in the pertinent exclusive provision of the lease between appellee and Mr. Music Man, Inc., that:

It is expressly agreed and understood that LANDLORD will not engage or lease to any other tenant whose principal business is record, tapes, and stereophonic equipment. Also the exclusive is not subject to White Mart, Hi-Vee, or any other junior department store that may be part of this shopping center.

Mr. Music Man, Inc., had been selling records and tapes in the Brookings Mall prior to appellant. The trial court found that the appellant's selling of records and tapes "would not be in the best interests of the shopping center." The trial court also found "[t]hat the proper tenant and merchandise mix is crucial to the overall success of a mall shopping center."

■ Appellee did not want another store in the mall which primarily sold records and tapes. It reasonably believed appellant would be doing so had the injunction not been ordered. White Mart, Hi-Vee, and other junior department stores apparently only sold records and tapes as incidental merchandise. By allowing appellant to sell records and tapes as a primary source of income, appellee would not only be upsetting the Mall's tenant-mix, but would also be violating its lease agreement with Mr. Music Man, Inc. We hold that the trial court's findings are not clearly erroneous. SDCL 15–6–52(a), *Drake v. Sample*, supra; *Cunningham v. Yankton Clinic, P.A.*, supra.

## III.

■ Appellant contends that the trial court erred in ruling that Article V, Section 1 of the lease does not constitute an unreasonable restraint of trade. SDCL 43–32–11 provides in pertinent part:

If premises are leased for a particular and specified purpose the tenant must not use the premises for other purposes[.]

A restraint of trade by contract is generally illegal if 1) the restraint is greater than is required to protect the party for whose benefit restraint is imposed, or 2) imposes undue hardship upon the restricted party, or 3) tends to create a monopoly. *Lien v. Northwestern Engineering Co.*, 73 S.D. 84, 32 N.W.2d 483 (1949). Also, a lease provision, express or implied, can forbid certain uses of demised premises. *American Legion Holding Corporation v. Hurowitz*, 72 S.D. 89, 30 N.W.2d 9 (1947).

■ Considering the nature of the lease and the circumstances of the alleged trade restraint, we reject appellant's argument and hold that the restraint imposed on appellee by the terms of the lease is not unreasonable nor does it violate public policy.

## IV.

■ Appellant's final contention is that the trial court erred in ruling that a permanent injunction was a necessary and proper remedy. SDCL 21–8–14 states:

Except where otherwise provided by this chapter, a permanent injunction may be granted to prevent the breach of an obligation existing in favor of the applicant:

(1) Where pecuniary compensation would not afford adequate relief;

(2) Where it would be extremely difficult to ascertain the amount of compensa-

tion which would afford adequate relief;

(3) Where the restraint is necessary to prevent a multiplicity of judicial proceedings; or

(4) Where the obligation arises from a trust.

SDCL 21–8–2 states:

An injunction cannot be granted:

. . . . .

(5) To prevent the breach of a contract, the performance of which would not be specifically enforced.

In *Hein v. Marts*, 295 N.W.2d 167, 171 (S.D. 1980), we stated: "The prerequisite to injunctive relief is the lack of an adequate and complete remedy at law." In the trial court's Conclusion of Law VII, it states:

That the Plaintiff would suffer irreparable harm, damage, and injury unless the lease contract is complied with by the Defendant. It would be extremely difficult to ascertain the amount of compensation which would afford adequate relief and that a permanent injunction should issue under SDCL 21–8–14(2) and related statutes to prevent the breach of an obligation existing in favor of the Plaintiff and prevent the Defendant from engaging in the retail sale of records and tapes, excepting imported records and tapes, and any other items not specified in this Lease Agreement without the prior written consent of the Plaintiff.

In *Foley v. City of Yankton*, 89 S.D. 160, 230 N.W.2d 476 (1975), this Court stated that a plaintiff may not be granted an injunction unless he shows a causative link between the defendant's actions and the plaintiff's injuries. *Foley* also stated that "the court should consider the doctrine of balancing equities" when deciding whether or not to grant an injunction. "This equitable doctrine encourages the denial of injunctive relief where the expense or hardship to be suffered by the defendant is disproportionate to the small benefit to be gained by the injured party." Id. at 166, 230 N.W.2d at 479. Appellant urges that the trial court erred in granting the injunc-

tion for purportedly failing to apply the balancing equities test. We disagree, as we do not view appellee's benefit to be disproportionate to appellant's hardship.

■ Appellant maintains that no irreparable damage to appellee was shown. Under SDCL 21–8–14, however, such a prerequisite to an injunction is not necessary. Regarding appellant's theory that SDCL 21–9–2(6), SDCL 21–9–3(2), and SDCL 21–9–4 preclude specific performance under this lease, we remind appellant that this action was not founded in specific performance. An injunction will be granted if the elements thereof are proven by a preponderance of the evidence. In *Foley*, we held that a grant or refusal of an injunction rests in the sound discretion of the trial court. Under a fair construction of this lease, the facts established, and the pleadings herein, the trial court properly issued an injunction. Appellee was not bound to pursue the equitable remedy of specific performance. We need not rule on the propriety of specific performance as this case was not tried under that theory.

Appellant lastly urges that an injunction should not have been granted due to waiver, estoppel, laches, acquiescence, and unclean hands on the part of appellee. All of these allegations stem from the meeting between Roger Ensenbach and Mark Norgaard which occurred in September of 1978. The specificities of this meeting have already been noted under *FACTS*, supra.

■ There are three main factors at the core of appellant's argument:

1) The lack of appreciable negative response from Norgaard at the September 1978 meeting as to appellant's plans to sell records and tapes.

2) The silence of appellee from September 1978 through January 1979, during which time appellant was in the process of preparing to sell records and tapes.

3) The acceptance of rent by appellee from appellant between September 1978 and January 1979.

All these factors, we believe, do not negate the legal effect of the letter from appellee to appellant dated September 1, 1978, stat-

ing appellee's objection to appellant's plans to sell records and tapes, and that a violation of the lease would occur if such plans were carried out. The litigants were bound by the terms of the lease, not by appellant's belief as to an oral understanding. Accordingly, we find appellant's contentions without merit.

The judgment and order of permanent injunction by the trial court is affirmed.

WOLLMAN, C. J., and MORGAN and FOSHEIM, JJ., concur.

DUNN, Justice, dissents.

DUNN, Justice (dissenting).

I am in agreement with the majority opinion that appellant had breached the terms of the written lease. However, I do not believe that equitable relief was justified.

The appellee had a sound remedy at law for damages caused by the breach. Its contention that it was difficult to prove damages stems from the fact that no damages were ever proved in the case. Further, appellee had allowed other lessees in the mall to sell records in conjunction with the specific businesses set out in their leases; and it had permitted a store to open in the mall in direct competition to appellant's main line of business.

Under these circumstances, I would hold that appellee is not entitled to equitable relief. It is an old maxim in the law that "he who seeks equity, should do equity."