#28052-aff in pt & rev in pt-DG

**2017 S.D. 49**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

ROBERT RUMPZA,
NANCY RUMPZA and
ZUBKE BROTHERS, LLC,                                    Plaintiffs and Appellees,


            v.


DAVID ZUBKE and
MARILYN ZUBKE,                                          Defendants and Appellants.


* * * *

APPEAL FROM THE CIRCUIT COURT OF

THE FIFTH JUDICIAL CIRCUIT

DAY COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JON S. FLEMMER

Judge

* * * *

REED RASMUSSEN of
Siegel, Barnett and Schutz, LLP
Aberdeen, South Dakota                      Attorneys for plaintiffs and
                                            appellees.


JACK H. HIEB
ZACHARY W. PETERSON of
Richardson, Wyly, Wise,
  Sauck & Hieb, LLP
Aberdeen, South Dakota                      Attorneys for defendants and
                                            appellants.

* * * *

                                            CONSIDERED ON BRIEFS
                                            ON APRIL 24, 2017
                                            OPINION FILED 08/09/17

#28052

GILBERTSON, Chief Justice

[¶1.] Robert and Nancy Rumpza and Zubke Brothers LLC (Brothers) sued David and Marilyn Zubke for allegedly changing the natural flow characteristics of water draining from the Zubkes' property to the Rumpzas' and Brothers' properties. After a court trial, the circuit court granted an injunction against the Zubkes and awarded damages to the Rumpzas and Brothers. The Zubkes appeal. We affirm the injunction and Brothers' damages award. We reverse the Rumpzas' damages award.

Facts and Procedural History

[¶2.] This case involves drainage issues between adjoining landowners in Day County. The Zubkes own the Northwest Quarter of Section 13, Township 120 North, Range 54 West. To the west of the Zubkes, the Rumpzas own the Northeast Quarter of Section 14, Township 120 North, Range 54 West. And to the west of the Rumpzas, Brothers owns the Northwest Quarter of Section 14, Township 120 North, Range 54 West. The Zubkes' and Rumpzas' properties are separated by Day County Road 1. The Rumpzas' and Brothers' properties are adjacent.

[¶3.] The Zubkes' property is dominant, historically draining onto the Rumpzas' property in two areas. In the southwest corner of the Zubkes' property, water drains through a culvert located below Road 1 (Drainage Area 1), flowing through the Rumpzas' property and onto Brothers' property. However, the culvert sits about 15 inches higher than the lowest point in the southwest corner of the Zubkes' property. Because of the height of this culvert, water collects in the area. Another culvert permits water to drain from the northwest corner of the Zubkes' property (Drainage Area 2) into a closed-basin slough on the Rumpzas' property.

[¶4.]        In 2012 and 2013, the Zubkes modified the established flow characteristics of Drainage Areas 1 and 2 in several ways.  First, they constructed a dam and used a portable pump to drain the southwest corner of their property.  Next, they dug a ten-foot-deep pit near the dam and placed a pump inside.  When the water level rises to a certain point, the pump engages, and the contents of the pit are pumped over the dam, through the culvert, and onto the Rumpzas' property.  The Zubkes also installed two areas of drain tile: one each in the southwest and northwest corners (Tile Area 1 and Tile Area 2, respectively) of their property.  Tile Area 2 causes water that would normally drain to the west through the northern culvert to instead flow south to the pit and pump.  Tile Area 1 facilitates draining areas that previously had remained wet.  The cumulative effect of these modifications is an increase in water flow through Drainage Area 1.

[¶5.]        The Rumpzas and Brothers commenced this suit on July 24, 2013, seeking an injunction and damages.  They argued that the Zubkes' modifications had increased the amount of drainage onto their properties and extended the time that water lingers in the established watercourse.  As a result, the Rumpzas and Brothers claimed they had been unable to plant and harvest crops in areas they had previously been able to farm.  The Zubkes responded that they were simply compensating for an obstruction in the watercourse on the Rumpzas' property.  After a court trial on December 14, 2015, the court returned judgment for the Rumpzas and Brothers.  The court entered an injunction prohibiting the Zubkes from operating the pump installed in Drainage Area 1 and requiring the Zubkes to immediately remove all drain tile from Tile Area 2.  The court also awarded

damages to the Rumpzas and Brothers in the total amounts of $12,465[1] and
$16,173,[2] respectively.

[¶6.]    The Zubkes appeal, raising two issues:

1.    Whether the circuit court erred in granting the injunction.

2.    Whether there was sufficient evidence to calculate damages.

## Standard of Review

[¶7.]    "[T]he question whether an injunction is statutorily authorized is reviewed de novo, and [a] court's subsequent decision to grant or deny [an] injunction is reviewed for an abuse of discretion." *Magner v. Brinkman*, 2016 S.D. 50, ¶ 19, 883 N.W.2d 74, 83.  An abuse of discretion is "a choice outside the range of permissible choices[.]" *MacKaben v. MacKaben*, 2015 S.D. 86, ¶ 9, 871 N.W.2d 617, 622 (quoting *Gartner v. Temple*, 2014 S.D. 74, ¶ 7, 855 N.W.2d 846, 850).  We will accept the circuit court's factual findings unless they are clearly erroneous.  *Id.*

## Analysis and Decision

[¶8.]    *1.    Whether the circuit court erred in granting the injunction.*

[¶9.]    The Zubkes argue the circuit court erred in concluding the Zubkes caused damage to the Rumpzas and Brothers.  The Zubkes assert the natural flow of water has been obstructed by silt in the watercourse on the Rumpzas' property.

---

1.    The court awarded the Rumpzas $4,675 in damages plus $1,267 in prejudgment interest for the year 2013; $2,850 plus $487 for 2014; and $2,975 plus $211 for 2015.

2.    The court awarded Brothers $4,000 in damages plus $1,084 in prejudgment interest for the year 2013; $7,000 plus $1,197 for 2014; and $2,700 plus $192 for 2015.

According to the Zubkes, their pump system is simply "'lifting' the water to a level that allows it to go over the high point on the Rumpzas' land and through the natural drainage way on the servient properties. It is restoring the drainage to what it would be if the unnatural obstructions were not present." The Zubkes further contend that the Rumpzas' and Brothers' damages "relate exclusively to damage to crops that were planted entirely within the natural drainage way that runs through" their properties. Finally, the Zubkes contend the "hardship to be suffered by [the Zubkes if the injunction is affirmed] is clearly disproportionate to the benefit to be gained by the servient landowners[.]"

[¶10.] In South Dakota, "[t]he owner of a dominant estate is permitted to drain water onto a servient estate 'by means of a natural water course or established water course.'" *Magner*, 2016 S.D. 50, ¶ 15, 883 N.W.2d at 81 (quoting SDCL 46A-10A-20(4)). The "rules regarding rural surface water drainage have been codified in SDCL 46A-10A-20." *Hendrickson v. Wagners, Inc.*, 1999 S.D. 74, ¶ 11, 598 N.W.2d 507, 510. That statute states, in part:

> [A]ny rural land which drains onto other rural land has a right to continue such drainage if:
>
> (1) The land receiving the drainage remains rural in character;
>
> (2) The land being drained is used in a reasonable manner;
>
> (3) The drainage creates no unreasonable hardship or injury to the owner of the land receiving the drainage;
>
> (4) The drainage is natural and occurs by means of a natural water course or established water course;
>
> (5) The owner of the land being drained does not substantially alter on a permanent basis the course of flow, the amount of flow, or the time of flow from that which would occur; and

> (6) No other feasible alternative drainage system is available that will produce less harm without substantially greater cost to the owner of the land being drained.

SDCL 46A-10A-20.[3] Subject to these restrictions, "owners of land may drain the land in the general course of natural drainage through the construction of open or covered drains which discharge the water into any natural watercourse, and if such drainage is wholly upon an owner's land, he is not liable in damages to any person." *Winterton v. Elverson*, 389 N.W.2d 633, 635 (S.D. 1986) (citing SDCL 46A-10A-70).

[¶11.]     The Zubkes first contend their drainage modifications were necessary to preserve their drainage rights as the owners of the dominant property. The Zubkes assert silt has caused a highpoint in the watercourse on the Rumpzas' property that obstructs the flow of water from the Zubkes' property. In their view, they are entitled to "restor[e] the natural drainage flow by getting the water up to an elevation where it can naturally drain over the obstruction." However, the Zubkes do not claim the Rumpzas intentionally obstructed the watercourse, nor do the Zubkes cite any authority for the proposition that a servient landowner has a duty to clear *natural* obstructions from a watercourse for the benefit of a dominant landowner. On the contrary, "the upper owner may not transfer the burdens imposed by nature on his land to that of the lower owner." *Id.* at 635.

---

3.     Strictly speaking, SDCL 46A-10A-20 itself does not govern the rights and liabilities of these parties; that statute applies to "[o]fficial controls instituted by a [county drainage] board[.]" However, SDCL 46A-10A-20 correctly states the common-law rule developed through our caselaw, which *does* control this case. Thus, it is correct to say, as we did in *Hendrickson*, that SDCL 46A-10A-20 is a codification of the common-law rules that apply in this case. *Hendrickson*, 1999 S.D. 74, ¶ 11, 598 N.W.2d at 510.

[¶12.]     Additionally, "it is impermissible for a dominant landowner to collect surface waters, and then cast them upon the servient estate in 'unusual or unnatural quantities.'" *Id.* (quoting *Thompson v. Andrews*, 39 S.D. 477, 492, 165 N.W. 9, 14 (1917)).  This is true even if the total volume of water remains the same.  *See id.*  "[S]urface water cannot be gathered together and cast in a body on the property of the lower owner so as to affect that neighbor's land in some other way than the way in which it has been affected." *Id.* (quoting *Feistner v. Swenson*, 368 N.W.2d 621, 623 (S.D. 1985)).  In this case, the circuit court found:

> Prior to the installation of the pump, the natural waterway running through Plaintiffs' property would typically be wet in the spring and then dry out as the year progressed.  This usually allowed Plaintiffs to farm the entire waterway.  Since the installation of the pump, Plaintiffs have been unable to farm these areas because they are continually wet.
>
> . . . .
>
> Both David Zubke and Defendants' expert, engineer Mike Gutenkauf, acknowledged the Defendants' drainage system caused additional water to flow onto Plaintiffs' property.  Defendants' expert further acknowledged that the drainage system changed the timing of how water was deposited on Plaintiffs' property.
>
> Defendants' drainage system has substantially altered the amount of flow and the time of flow from that which would naturally occur.

These findings are supported by testimony from Robert Rumpza and Duane Zubke, one of the owners of Brothers.  The circuit court—which is the sole judge of credibility in this case, *Lindblom v. Sun Aviation, Inc.*, 2015 S.D. 20, ¶ 9, 862 N.W.2d 549, 552—apparently considered these witnesses credible, and we see no basis for concluding the court's findings are clearly erroneous.

[¶13.] Our opinion in *Winterton* supports our conclusion. In that case, the owner of a dominant estate "installed a tile drainage system upon his property to enhance its productivity and to reduce erosion. The system drained only surface water and discharged it into the natural drainage waterway." *Winterton*, 389 N.W.2d at 634. Prior to the modifications, drainage onto the servient estate was sporadic and forceful. "[T]he rate of flow of the water kept it moving across [the servient] property so that it would not accumulate or stand for more than a short period of time." *Id.* Thus, the drainage did not prevent the servient estate's owner from farming. *Id.* "However, the tile drainage system caused a continuous and even flow of surface water to drain at a much slower rate onto [the servient estate]. The water stayed on [the] land rather than flowing over or through it." *Id.* The result was that "the continuous and slower flow of surface waters caused approximately four acres of [the] land to remain wet for most of the year and rendered it untillable." *Id.* at 635. We held that such amounted to "unnatural or unusual quantities." *Id.*[4]

[¶14.] *Winterton* also disposes of the Zubkes' contention that the Rumpzas' and Brothers' damages "relate exclusively to damage to crops that were planted entirely within the natural drainage way that runs through" their properties. As in

---

4. According to the Zubkes, *Winterton* is distinguishable because: (1) the servient landowner proved he had been able to farm the land prior to the drainage modification; (2) the plaintiffs in the present case contributed to the amount of water in the watercourse; and (3) the extra drainage in this case does not exceed the capacity of the watercourse. These arguments, however, are premised entirely on the Zubkes' view of the facts. The circuit court rejected that view when it found that the Rumpzas and Brothers had been able to farm the watercourse prior to—but not after—the Zubkes' modifications.

the present case, the owner of the dominant estate in *Winterton* installed a drain-tile system that "discharged [surface water] into the natural drainage waterway." *Id.* at 634. As noted above, the modifications at issue rendered several acres of previously tillable land—all located in the natural watercourse—unusable. *Id.* at 634-35. Thus, the fact that the damage complained of is located in the natural watercourse is not dispositive—what matters is that the Zubkes' drainage modifications affected the Rumpzas' and Brothers' properties "in some other way than the way in which it has been affected." *Id.* at 635 (quoting *Feistner*, 368 N.W.2d at 623).

[¶15.] In light of *Winterton* and the circuit court's factual findings in this case, there is a "causative link between the actions of the [Zubkes] and the injury complained of." *Magner*, 2016 S.D. 50, ¶ 19 n.10, 883 N.W.2d at 83 n.10 (quoting *Foley v. City of Yankton*, 89 S.D. 160, 165, 230 N.W.2d 476, 479 (1975)). The Zubkes have not established that they had a right to bypass or compensate for the natural obstruction in the watercourse on the Rumpzas' property. Nor have the Zubkes established that the circuit court clearly erred in finding that their drainage modifications have caused the watercourse to be continually wet. Therefore, the circuit court did not err in concluding the Zubkes caused the damage complained of.

[¶16.] Next, the Zubkes contend that if the injunction is affirmed, "[t]he hardship to be suffered by [the Zubkes] is clearly disproportionate to the benefit to be gained by the servient landowners." The Zubkes again assert that the Rumpzas and Brothers would be unable to farm land located within the watercourse even if the Zubkes were required to remove their drainage modifications. But as discussed

above, this is a factual matter, and the Zubkes have not met their burden of showing the circuit court's findings are clearly erroneous. The Zubkes also contend the Rumpzas acted inequitably by failing to clear the obstruction from the watercourse. Again, as noted above, the Zubkes cite no authority for the proposition that the Rumpzas have a duty to clear naturally occurring obstructions in the watercourse.

[¶17.] Regardless, the relative-hardship test is inapplicable in this case. "[T]he court will not balance equities where the actions of the defendant were taken willfully and with full knowledge of plaintiff's rights and the consequences which might ensue." *Foley*, 89 S.D. at 166, 230 N.W.2d at 479. The circuit court found that "[t]he damages suffered by Plaintiffs have not resulted from an innocent mistake on the part of Defendants." The Zubkes do not mention this finding, let alone challenge it as clearly erroneous. As the circuit court noted, "there is no question that the equipment was not installed by accident." Nor can there be any doubt that the Zubkes were aware that their modifications would increase the amount of water flowing downstream—the modifications were designed to do just that. Therefore, the Zubkes' relative-hardship argument is irrelevant, and the injunction was not an abuse of discretion.

[¶18.] **2.** **Whether there was sufficient evidence to calculate damages.**

[¶19.] The Zubkes next argue that the Rumpzas and Brothers failed to provide evidence sufficient to support the circuit court's award of damages. "The amount of damages to be awarded is a factual issue." *Kreisers Inc. v. First Dakota Title Ltd. P'ship*, 2014 S.D. 56, ¶ 40, 852 N.W.2d 413, 424 (quoting *Weekley v.*

*Wagner*, 2012 S.D. 10, ¶ 13, 810 N.W.2d 340, 343). The party alleging injury has the burden of proving the amount of damages with reasonable certainty. *See id.* "Once the existence of damage has been shown by a preponderance of the evidence, a claimant must produce only the best evidence available to allow a jury a reasonable basis for calculating the loss." *McKie v. Huntley*, 2000 S.D. 160, ¶ 20, 620 N.W.2d 599, 604. "The measure of damages for destruction of a crop is the value at the time and place of destruction. This may be established by showing the probable yield had there been no injury and the market value thereof, and subtracting therefrom the necessary cost of tilling, harvesting, and marketing." *Winterton*, 389 N.W.2d at 636-37.[5]

[¶20.]     The only evidence introduced by the Rumpzas and Brothers establishing the amount of loss was the testimony of Robert Rumpza and Duane Zubke. Duane Zubke testified as follows:

> [Zubke Brothers' Attorney]: Have you attempted to calculate a crop loss as a result of your inability to plant in 2013 and 2014?
>
> [Duane Zubke]: Yes.
>
> [Zubke Brothers' Attorney]: Let's talk about 2013 first. What have you calculated as far as that goes?
>
> [Duane Zubke]: It's, roughly, $7,000.
>
> [Zubke Brothers' Attorney]: And how do you figure that?

---

5.     "The market measure attempts to make sure the defendant's tort or contract breach does not leave the plaintiff with assets or net worth less than that to which she is entitled." Dan B. Dobbs, *Law of Remedies* § 3.3(3) (2d ed. 1993). Thus, planting and harvesting expenses that have already been incurred are not deducted from the measure of damages. For example, if a farmer does not buy or plant seed because his land is already flooded, then in calculating damages, the cost of the seed and planting must be deducted from the market value of the crop. But if the farmer buys seed and plants it, and then the crop is destroyed due to flooding, the cost of the seed and planting should not be deducted from the measure of damages.

> [Duane Zubke]: I took out the—what I did on the rest of the land, the seed, the cost of my seed, the fertilizer, chemical, fungicide and took that cost off of what the rest of the crop was—I believe it was 70 some bushels wheat at the price, the current price, and subtracted the inputs from the expense and—or the gross revenue I thought I should have gotten and I come up with, roughly, I believe it was 7,000 some dollars.
>
> . . . .
>
> [Zubke Brothers' Attorney]: Can you estimate what the loss was for 2014?
>
> [Duane Zubke]: For 2014 it was, roughly, 7,000.

From Duane's testimony, it appears that he calculated the projected gross revenue from the lost crop and deducted the same production costs he incurred in regard to the rest of his crop. While the possibility exists that some expense was not deducted, the amount of damages does not need to be proven with absolute exactness. *Swenson v. Chevron Chem. Co.*, 89 S.D. 497, 505, 234 N.W.2d 38, 43 (1975). In light of Duane's testimony, we cannot say the circuit court's factual findings regarding Brothers' measure of damages are clearly erroneous.

[¶21.] However, the court's findings regarding the Rumpzas' measure of damages is another matter. Robert's testimony on this issue consists of the following:

> [Rumpzas' Attorney]: Have you attempted to calculate crop losses that you believe you've experienced as a result?
>
> [Robert Rumpza]: Yes, I have.
>
> [Rumpzas' Attorney]: What do you have for 2013?
>
> [Robert Rumpza]: 2015, I figure—
>
> [Rumpzas' Attorney]: 'Thirteen.
>
> [Robert Rumpza]: Oh, excuse me, '13. 4675. $4,675.
>
> [Rumpzas' Attorney]: And how did you calculate that?

> [Robert Rumpza]:  I used my combine yield monitor to run the difference and took the bushels what the rest of the field is doing in comparison.
>
> [Rumpzas' Attorney]:  And did you do a similar calculation—
>
> [Robert Rumpza]:  Yes.
>
> [Rumpzas' Attorney]:  —for 2014 and 2015?
>
> [Robert Rumpza]:  Yes, I did.
>
> [Rumpzas' Attorney]:  What did you come up with for 2014?
>
> [Robert Rumpza]:  2,850.
>
> [Rumpzas' Attorney]:  Okay.  And how about 2015?
>
> [Robert Rumpza]:  2,975.

In comparison to Duane's testimony, Robert gives no reasonable basis for concluding he deducted all—or even any—of the appropriate expenses in calculating the Rumpzas' lost profits.[6]  As noted above, appropriate costs must be deducted in calculating the measure of damages.  *Winterton*, 389 N.W.2d at 637; *accord Bruha v. Bochek*, 76 S.D. 131, 135, 74 N.W.2d 313, 315 (1955).  "It is obvious that . . . the court did not have sufficient data before it upon which to determine the actual damage."  *Bruha*, 76 S.D. at 135, 74 N.W.2d at 315.  Therefore, we reverse.

## Conclusion

[¶22.]     The circuit court did not err in concluding the Zubkes caused the damage complained of in this case, and the court did not abuse its discretion by issuing the injunction.  The court's factual findings regarding Brothers' measure of damages are not clearly erroneous.  However, there is no support in the record for the court's findings regarding the Rumpzas' measure of damages.

---

6.     Robert did testify that he planted but did not harvest in 2015.  So while it was not necessary to include the cost of planting in the damages calculation for 2015, *see supra* ¶ 19 n.5, there is no indication that Robert deducted the other appropriate expenses.

[¶23.]    We affirm the injunction and Brothers' damages award.  We reverse the Rumpzas' damages award.

[¶24.]    ZINTER, SEVERSON, and KERN, Justices, and WILBUR, Retired Justice, concur.