#25233-a-SLZ

**2010 SD 28**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

ALVINE FAMILY LIMITED
PARTNERSHIP,                                        Plaintiff and Appellant,

v.

JAMES HAGEMANN, HAGEMANN
RED ANGUS and FLOYD DEMARAY,          Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
LAKE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE TIM D. TUCKER
Judge

* * * *

RONALD A. PARSONS, Jr. of
Johnson, Heidepriem,
  Abdallah & Johnson, LLP
Sioux Falls, South Dakota                  Attorneys for plaintiff
                                           and appellant.


MARK V. MEIERHENRY
WILLIAM E. BLEWETT of
Meierhenry & Sargent, LLP
Sioux Falls, South Dakota                  Attorneys for defendants
                                           and appellees.

* * * *

ARGUED JANUARY 14, 2010

OPINION FILED **03/17/10**

#25233

ZINTER, Justice

[¶1.]    Alvine Family Limited Partnership (Alvine) sued a neighboring landowner and his tenant for, *inter alia*, negligence, nuisance, and trespass. Alvine alleged that manure from the tenant's cattle had entered Alvine's land, causing aquatic plant growth and a fish kill in two stock dams. At the close of the evidence, Alvine moved for judgment as a matter of law on his claim for trespass. The circuit court denied the motion. The jury subsequently returned a defense verdict. Alvine renewed his motion for judgment as a matter of law on the trespass claim, and the circuit court denied the motion. Alvine appeals, arguing that there was no dispute regarding an intentional physical intrusion and any disputes regarding causally related harm were irrelevant because a trespass to land occurs by physical intrusion irrespective of harm. We conclude that causally related harm became an element of trespass under the court's instructions, and because Alvine did not argue instructional error in his post-trial motions, causally related harm became an element of trespass under the law of this case. Because the dispute of fact regarding harm was resolved by the jury in favor of the defendants, we affirm without reaching Alvine's legal question regarding the elements of trespass.

*Facts and Procedural History*

[¶2.]    The Demaray family operated a farm on the property at issue for over 100 years. They raised cattle since 1914. George Demaray lived on the farm until 1983. George had maintained a herd of up to 150 head of cattle. During the winter months, George moved the cattle from a pasture to a winter confinement area. The

parties dispute whether the winter confinement area, which is the focus of this suit, has been moved or enlarged since 1955.

[¶3.] In 1986 or 1987, George rented the property to James Hagemann. Hagemann began a cattle operation called Hagemann Red Angus. In 2001, Floyd Demaray (hereinafter "Demaray") inherited the property from George, and Demaray continued to rent it to Hagemann. Over the years, Hagemann's herd grew from about 60 to 130 head of cattle. According to Hagemann, he kept his cattle in the same winter confinement area George previously used.

[¶4.] There was no waste collection system for the winter confinement area. When the ground would begin to thaw each year, Hagemann, like George's prior practice, would "scrape" the cattle manure and straw from the winter confinement area into a compost pile. The compost would remain in the confinement area until it was spread upon nearby fields where it was tilled into the soil in accordance with a National Resources Conservation Service developed manure management plan.

[¶5.] In 1973, Frank Alvine, through the Alvine Family Limited Partnership, purchased 800 acres of adjoining land. This property consisted of farmland, some federally protected wetlands, and some land in the Conservation Reserve Program. There was one stock dam on the property. Alvine built a second dam in 1978 for "wildlife propagation, fish propagation, recreation and stock watering."[1] Alvine also used the stock dams for family recreation, including swimming and boating. Alvine referred to the property as a "wildlife refuge," and

---

1. The stock dams were also referred to as small lakes.

he took steps to encourage wildlife to congregate. Herds of over 200 deer had been observed, and the stock dams attracted waterfowl as there were two federal waterfowl production areas nearby. On occasion, the stock dams had been observed to be "dark with geese."

[¶6.] The Alvine property lies directly south and downhill from the Demaray property. The two properties are divided by a gravel township road. Water naturally drains southward from the Demaray property through a culvert in the road to the Alvine property and then into inlets that allow water to flow into both stock dams. The cattle confinement area is located on an incline bordering Alvine's property. Alvine alleged that prior to Hagemann's leasing the land from the Demarays, the area bordering the two properties had no confinement area and was an open pasture. Hagemann disputed that assertion and argued that he had not moved the confinement area from the place previously used by George. Regardless of this dispute, Hagemann admitted that because of the location and elevation of the confinement area, runoff from his cattle operation drained southward to the Alvine property.

[¶7.] In 2001, Alvine experienced excessive aquatic plant growth and a fish kill in his stock dams. Alvine suspected that the problem was caused by runoff from the manure generated in Hagemann's cattle operation. In 2003, Alvine hired an expert to test the water in his stock dams. Testing of the inlets and stock dams from 2003 through 2007 revealed substantial levels of fecal coliform and ammonia. Subsequent testing revealed the presence of E-coli and highly elevated levels of phosphorus.

[¶8.]     Alvine retained hydrologist, Tim Kenyon, and limnologist, Dick Osgood.  Kenyon opined that runoff from the cattle confinement area was entering Alvine's property.  Kenyon testified that when he was on the site, he saw fecal matter flowing into the inlets.  Similarly, Osgood opined that Hagemann's cattle operation was the source of fecal coliform, phosphorus, and ammonia in Alvine's stock dams.  Alvine's experts further opined that elevated phosphorus levels were causing the weed growth in the stock dams, which resulted in the fish kill.  Alvine's experts acknowledged, however, that (1) Alvine himself had collected nearly all of the samples, (2) no baseline testing of the water occurred before 2003, and (3) there had been no attempts to calculate what portion of any pollutants came from other agricultural sources within the watershed.  Further, Alvine's experts did not provide any benchmark levels for fecal coliform, phosphorus, or ammonia, and they provided no comparative data for other bodies of water in the area.

[¶9.]     Alvine contacted Demaray in July 2004 after receiving some of the results of the testing.  Alvine requested Demaray to install a waste containment lagoon, but Damaray refused.  Although Demaray did install two large "buffer strips" on each side of the winter confinement area to divert runoff, Alvine contended the buffer strips were ineffective.

[¶10.]    Alvine commenced suit in June 2007.[2]  A jury trial was conducted in March 2009.  The defense focused on questions whether other upstream landowners could have been the source of the pollutants, whether Hagemann "intentionally" trespassed, and whether Alvine's stock dams incurred any significant harm as a result of Hagemann's activities.  Hagemann also contended that Alvine's "wildlife refuge," specifically the large concentrations of geese and deer, were a contributing cause of Alvine's problem.

[¶11.]    The defendants retained expert Mike Meyer, an environmental consultant and hydrogeologist.  Meyer opined that open-water data was the best indicator of pollution harm to a body of water.  He noted that an open-water sample taken near geese on Alvine's stock dam showed a fecal coliform reading of 1260, while an open-water sample taken only 50 feet away showed a reading of 2.  Meyer also compared the results of Alvine's and Meyer's test samples with published data for waters throughout the State.  Meyer opined that the comparison showed the water quality in Alvine's stock dams was "very good" and "better than a number of the lakes in South Dakota."  For example, the chloride levels[3] for Lake Madison, a popular nearby lake used for public recreation, were considerably higher than chloride levels in Alvine's stock dams.  Meyer testified:

---

2.    In March 2008, less than a year after the complaint was filed, Hagemann stopped wintering cattle on Demaray's land.  The winter confinement area was placed in the Conservation Reserve Program and planted with native grasses.  This use was expected to continue for the next ten years.  Notwithstanding this change of use, Alvine alleged that he would incur future treatment and remediation costs of $31,400 over the next ten years.

3.    Chloride is an indicator of animal and human waste.

> Q: As someone who studies pollution, is there any pollution harm being caused to the Alvine dams?
>
> A: Well, if you're – if you use the open-water data, no, there is no obvious problem.
>
> Q: Alright. And that's the best indicator?
>
> A: Yes, ideally.

[¶12.] At the close of the evidence, Alvine moved for a directed verdict (properly termed a motion for judgment as a matter of law, *see* SDCL 15-6-50(a)) on the trespass cause of action. The argument Alvine presented to the circuit court was ambiguous concerning the elements of trespass Alvine believed necessary to prove that cause of action. The argument can be read to suggest that Alvine was proceeding on the theory that an intentional physical intrusion was all that was required to prove the tort. However, the argument can also be read to suggest that Alvine was proceeding under the theory that the elements of trespass included both an intentional physical intrusion and causally related harm. Alvine first argued that the evidence of an intentional physical intrusion of manure established trespass. Alvine then argued that there was evidence of causally related "harm." Following his argument that he had proved causally related harm, Alvine concluded: "We clearly established the elements of trespass."

[¶13.] It is not clear from the transcript how the circuit court understood Alvine's argument, but the court denied Alvine's motion. It is, however, clear that during closing arguments, causally related harm was argued to be an element of trespass. The defense argued that Alvine's "whole case [was] premised on harm." Counsel for the defendants argued:

> [M]ost importantly, and this is something [Alvine] can't quarrel with . . . this whole case is premised on harm. . . . [T]his harm has never been shown and this transfers through all [of Alvine's] complaints. We have never seen that they have ever been harmed. . . . They have to show he was harmed[.]

[¶14.] It is also clear that the case was submitted to the jury on the theory that substantial, causally related harm was an element of civil trespass. Instruction 12 required proof of an intentional entry that was a "substantial factor in causing" Alvine's harm. The instruction stated in relevant part:

> To establish [civil trespass], Alvine Family Limited Partnership must prove the following:
>
> (1) Floyd Demaray, Jim Hagemann or Hagemann Red Angus intentionally caused a thing to enter the land owned by Alvine Family Limited Partnership or allowed a thing to remain on the Alvine property that they have a duty to remove; *and*
>
> (2) The Defendant's trespass was a *substantial factor* in *causing* Alvine Limited Partnership's *harm*.

(Emphasis added.)

[¶15.] Because the jury returned a unanimous, general verdict for the defendants on all theories of liability, it did not reach the question of damages. Alvine subsequently moved for a judgment notwithstanding the verdict (properly termed a renewed motion for judgment as a matter of law, *see* SDCL 15-6-50(b)) or motion for new trial on the trespass cause of action. Alvine was again inconsistent on his theory of the elements of trespass. Although at one point he mentioned that harm was not an element of trespass, he did not argue that the motions should be granted because of instructional error in telling the jury that harm was an element of trespass. On the contrary, Alvine's argument assumed that harm was an

element of trespass. He argued that "for whatever reason [the jury] just did not follow the law" upon which it had been "instructed," instructions requiring substantial, causally related harm.

[¶16.] The circuit court denied Alvine's motions on "the bases previously stated at the motion for summary judgment and motion for partial summary judgment." In its order denying those motions, the court stated "there [were] disputed facts precluding a summary judgment ruling on Plaintiff's trespass claim."

[¶17.] On appeal, Alvine raises two arguments in support of his contention that the circuit court erred in denying his renewed motion for judgment as a matter of law or motion for new trial. Alvine first argues that harm is not an element of trespass. He then argues that under this theory of trespass, he was entitled to a judgment as a matter of law because the evidence was undisputed that the defendants intentionally allowed manure to enter Alvine's property, irrespective of disputes regarding harm.

*Decision*

[¶18.] In reviewing a renewed motion for judgment as a matter of law after the jury verdict, the evidence is reviewed "in a light most favorable to the verdict or to the nonmoving party." Harmon v. Washburn, 2008 SD 42, ¶ 9, 751 NW2d 297, 300. Then, "[w]ithout weighing the evidence, [the court] must decide if there is evidence which would have supported or did support a verdict." *Id.* (citations omitted). "Only in exceptional cases may the verdict be directed in favor of the party having the burden of proof." *Id*. ¶ 12, 751 NW2d at 301 (citations omitted). Similarly, a motion for new trial will not be granted if the jury's verdict can be

explained with reference to the evidence, and the evidence is viewed in a light most favorable to the verdict. Itzen v. Wilsey, 440 NW2d 312, 314 (SD 1989). Both the motion for renewed judgment as a matter of law and the motion for new trial are reviewed under the abuse of discretion standard. Lord v. Hy-Vee Food Stores, 2006 SD 70, ¶ 25, 720 NW2d 443, 453.

[¶19.]     Defendants' trial evidence raised a number of issues of disputed fact whether Hagemann's cattle operation was a substantial factor in causing Alvine harm. Factual disputes generally prohibit granting a judgment as a matter of law. Alvine, however, contends that the factual disputes regarding causally related harm are irrelevant because a trespass upon land occurs by intentional physical intrusion irrespective of whether the intrusion causes harm. Alvine points out that under the Restatement:

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally
>
> (a) enters land in the possession of the other, or causes a thing or a third person to do so, or
>
> (b) remains on the land, or
>
> (c) fails to remove from the land a thing which he is under a duty to remove.

Restatement (Second) of Torts § 158 (1965). Relying on the preamble and subsection (a), which do not require causally related harm, Alvine argues that he was at least entitled to a judgment finding that a trespass had occurred because "no reasonable fact finder could fail to conclude that the defendants placed the cattle and piled the resulting manure on the property line with knowledge that it would  .

. . result in the entry of the foreign matter onto [ ] Alvine's land[.]" Alvine further argues that under South Dakota law, he was entitled to such a judgment even if he was only entitled to nominal damages. *See* Bartels v. Anaconda Co., 304 NW2d 108, 110-11 (SD 1981) (concluding that even though the trespassing party may not have been *the* cause of damage to another's property, the landowner was entitled to an award of nominal damages). Alvine finally relies on other authorities holding or suggesting that harm is not an element of trespass.[4] Although we have not directly addressed Alvine's legal argument regarding the Restatement elements of trespass, we may not do so here because causally related harm became the law of this case under Instruction 12, and Alvine failed to argue instructional error in his renewed motion for judgment as a matter of law or motion for new trial.

[¶20.] As previously noted, the jury was instructed on a theory of trespass that required the defendants' "trespass [to be] a substantial factor in causing Alvine

---

4. Alvine relies on the following cases discussing the Restatement and concluding that a trespass to land may occur irrespective of causally related harm: Rushing v. Hooper-McDonald, Inc., 293 Ala 56, 300 So2d 94 (1974); Dial v. City of O'Fallon, 81 Ill2d 548, 411 NE2d 217 (1980); Ducham v. Tuma, 265 Mont 436, 877 P2d 1002 (1994), *overruled on other grounds by* Shammel v. Canyon Res. Corp., 319 Mont 132, 82 P3d 912 (2003); Lambert v. Holmberg, 271 Neb 443, 712 NW2d 268, 274 (2006); Bradley v. Am. Smelting and Refining Co., 104 Wash2d 677, 709 P2d 782 (1985).

This Court has referenced the Restatement's definition in dictum. *See* Benson v. State, 2006 SD 8, 710 NW2d 131 (citing Restatement § 158 in disposing of a tangential assertion in a condemnation case); Gakin v. City of Rapid City, 2005 SD 68, 698 NW2d 493 (citing Restatement to show that trespass is a tort not subject to the contract statute of limitations); State v. Rumpca, 2002 SD 124, 652 NW2d 795, *superseded by statute,* SDCL 41-9-1(2), *as recognized by Benson v. State,* 2006 SD 8, 710 NW2d 131 (citing the Restatement in considering a statute requiring permission to hunt on private land).

Limited Partnership's harm." *See supra* ¶ 14. Although Alvine made a general objection to Instruction 12, his objection was not sufficient to preserve the issue for appellate review. Alvine objected to Instruction 12, arguing only that "we don't believe it is -- [app]lies the applicable law in this case." No explanation was given how the instruction failed to apply the applicable law. This type of nonspecific objection fails to satisfy SDCL 15-6-51(c)(1), which requires: "A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds of the objection." *See also* Duda v. Phatty McGees, Inc., 2008 SD 115, ¶ 27, 758 NW2d 754, 762 ("An attorney must be clear when objecting to jury instructions 'so the trial court is advised of what possible errors exist and be granted the opportunity to correct any instructions.'") (quoting Parker v. Casa Del Rey-Rapid City, Inc., 2002 SD 29, ¶ 15, 641 NW2d 112, 118) (further citation omitted). Absent a *proper* objection, we have long held that the jury instructions become the law of the case. *See* Zeigler v. Ryan, 65 SD 110, 112, 271 NW 767, 768 (1937) (stating the rule followed in many South Dakota cases that in the absence of an objection to the court's instructions, the law set forth in those instructions becomes "the law of the case"). *See also* Knutson v. Hess, 1996 SD 137, ¶ 11, 556 NW2d 73, 77 ("[T]he complaining party must have properly objected to the instruction in order to preserve the issue on appeal, or the improper instruction becomes the law of the case." (quoting Wallahan v. Black Hills Elec. Coop., 523 NW2d 417, 419-20 (SD 1994); State v. Willis, 370 NW2d 193, 200 (SD 1985); Shaull v. Hart, 327 NW2d 50, 53 (SD 1982)). Therefore, because Alvine did not make a sufficient objection to Instruction 12, Alvine may not argue on appeal a

different state of the law than that upon which the jury was instructed in Instruction 12.

[¶21.]     Alternatively, even if a proper objection had been made to Instruction 12, Alvine did not argue instructional error in his renewed motion for judgment as a matter of law or motion for new trial -- the motions that we are reviewing on appeal.[5]   Rather than arguing that Instruction 12, which required causally related harm,  was erroneous, Alvine argued the jury "failed to follow" that instruction. Because Alvine's post-trial motions were based on the theory of law contained in Instruction 12, that instruction was the law of the case and Alvine may not now raise a different argument on appeal.  We have consistently held that this Court may not review theories argued for the first time on appeal.  Boever v. Bd. of Accountancy, 526 NW2d 747, 750 (SD 1995).

[¶22.]     Because Alvine did not preserve his causally related harm arguments at trial, we must review the evidence under the law of the case that required causally related harm as an element of trespass.  That requires us to review the record to determine whether there was any evidence upon which a jury could have found that Alvine failed to meet his burden of proving Hagemann's cattle operation was a substantial factor in causing harm to Alvine.  The defendants' evidence on causally related harm included assertions that:  Alvine's sample collection method was suspect; there was insufficient baseline data; there was no evidence excluding other polluting sources in the same watershed; large numbers of wildlife on Alvine's

---

5.    SDCL 15-6-59(a)(7) specifically contemplates jury instruction error as a
      ground for new trial.

property may have been a contributing source of pollution; chloride levels in Lake Madison were considerably higher than chloride levels in Alvine's stock dams; the water quality in Alvine's stock dams was "very good" and "better than a number of the lakes in South Dakota"; and, according to one expert, "there [was] no obvious problem" of pollution in Alvine's stock dams. This evidence, when considered in a light most favorable to the defendants, could have been sufficient for a jury to have found that Alvine failed to meet his burden of proving that *these defendants'* actions were a *substantial factor* in causing the harm Alvine alleged.

[¶23.]     Because the defendants' evidence could have supported the jury's verdict on the defendants' theory of causally related harm as set forth in Instruction 12, and because Alvine did not challenge that instruction in his motions for renewed judgment as a matter of law or new trial, the circuit court did not abuse its discretion in sustaining the jury verdict. We affirm.[6]

[¶24.]     GILBERTSON, Chief Justice, and KONENKAMP, and SEVERSON, Justices, and VON WALD, Circuit Judge, concur.

[¶25.]     VON WALD, Circuit Judge, sitting for MEIERHENRY, Justice, disqualified.

---

6.     By this decision, we express no opinion on the elements of trespass to land under South Dakota law.