#27354-aff in pt & rev in pt-DG
**2016 S.D. 50**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

MICHAEL A. MAGNER and
DENISE W. WILLIAMS,                                   Plaintiffs and Appellees,

v.

GLENN J. BRINKMAN and
SUSAN BRINKMAN d/b/a
BRINKMAN ARABIAN STABLES,
jointly and severally,                                   Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MARK BARNETT
Judge

* * * *

BRAD SCHREIBER of
The Schreiber Law Firm, Prof. LLC
Pierre, South Dakota                                   Attorneys for appellees.


JAMES E. CARLON
Pierre, South Dakota                                   Attorney for appellants.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 16, 2016
OPINION FILED **07/13/16**

GILBERTSON, Chief Justice

[¶1.]        Michael A. Magner and Denise W. Williams (Plaintiffs) sued Glenn J. and Susan Brinkman (Defendants) for allegedly causing an increased amount of water drainage on Plaintiffs' land by altering the natural flow of water across Defendants' land.  Defendants appeal the circuit court's judgment entered after a jury trial, arguing that they were entitled to judgment as a matter of law because Plaintiffs failed to offer proof that Defendants caused the increase in drainage.  Defendants also argue that the court abused its discretion in granting Plaintiffs a permanent injunction ordering Defendants to pay additional money for repairs and preventive landscaping.  We affirm the court's denial of Defendants' requests for judgment as a matter of law.  We reverse the court's grant of injunction and remand.

**Facts and Procedural History**

[¶2.]        Defendants purchased a 160-acre tract northeast of Pierre in 2004.  Plaintiffs purchased their home, which is located on a 40-acre tract bordering Defendants' property, and moved in on January 4, 2007.  The properties are coterminous on their western borders, where they are bounded by a county road that falls on a section line.  There are three areas between the two properties that naturally pool water: one in the northeastern area of Defendants' property; one at the northwestern corner of Defendants' property; and a pond near the east–west center of Plaintiffs' property, near its northern border with Defendants' property.  The area extending northwest from Plaintiffs' pond to the southwestern corner of Defendants' property is a designated wetland.  Plaintiffs' property is lower in

elevation than Defendants', and water naturally flows from Defendants' property onto Plaintiffs' property.

[¶3.] This lawsuit centers on the drainage of water from Defendants' property onto Plaintiffs' property. In particular, the trial focused on three occurrences of drainage that led to the current controversy. First, on June 12, 2007, the two properties received rainfall in excess of three inches. As a result of this rainfall, a significant amount of water pooled near Defendants' barn and corrals. However, water did not accumulate anywhere on Plaintiffs' property, and at that point, Plaintiffs' pond was empty. Shortly thereafter, Defendants dug a trench leading from the pool to the border with Plaintiffs' property in an attempt to divert this water onto Plaintiffs' land. Although the parties dispute the reason for and timing of this trench,[1] Plaintiffs initially permitted Defendants to drain water into Plaintiffs' pond but later withdrew that consent. Defendants complied by filling in the end of the trench with dirt.

[¶4.] On June 3, 2008, the same area again received rainfall in excess of three inches. Initially, Plaintiffs' pond was damp but did not have any standing water. Defendants' property, on the other hand, had standing water similar to that in June 2007. Defendants dug another trench to again divert water to the southern slope of their property, which in turn flowed onto Plaintiffs' property. This diversion contributed to filling Plaintiffs' pond and flooding the northwest portion of

---

1. Plaintiffs claim Defendants dug the trench and then asked for permission to drain the water that had pooled. Defendants claim they dug the trench at Plaintiffs' request because Plaintiffs wanted to fill the pond and stock it with fish.

their property. Plaintiffs sent a certified letter to Defendants informing them that Plaintiffs were aware of the second trench. Plaintiffs also contacted the Natural Resources Conservation Service (NRCS), an agency of the United States Department of Agriculture. Lowell Noeske, a district conservationist with the NRCS, performed an on-site review on June 16. In a report dated June 18, he stated to Plaintiffs: "There was some disturbed earth where you indicated a ditch had been excavated. It is my determination that the shape of the land on the ground today is near natural condition and that no alteration currently exists on the wet area in question."

[¶5.]     The third drainage event occurred in 2010. The county road on the western border of the parties' properties had fallen into disrepair. The road had numerous low points that collected water, including the area at the northwestern corner of Defendants' property. Because the county lacked the funds to repair the road, Defendants sought to effect the repair themselves. Upon discovering that rebuilding the road to county specifications would be cost prohibitive, Defendants instead decided to build a private road just inside the western boundary of their property, running parallel to the county road. Defendants installed a culvert in the southern half of the private road that permits water to cross under and drain onto the southern slope of Defendants' property, which is part of the shared wetland area that includes Plaintiffs' pond. After Defendants built their private road, additional rainfall and melting snow caused a significant amount of water to accumulate in the northwestern portion of Plaintiffs' property.

[¶6.]     As a result of these drainage events, Plaintiffs were unable to pasture their intended number of cattle for several years. They filed suit on November 22, 2011, alleging public and private nuisance. Plaintiffs sought $50,000 in damages for lost business income, $5,000 in damages to remove accumulated silt and dirt from their pond, and a permanent injunction requiring Defendants to reverse any alterations they made to the drainage pattern. A trial was held on November 14 and 15, 2013. At the close of Plaintiffs' case, Defendants filed a motion requesting judgment as a matter of law, and the circuit court denied the motion. The jury awarded Plaintiffs $9,950 in damages, and Defendants filed a motion renewing their request for judgment as a matter of law. The court denied the motion, and Defendants voluntarily satisfied the judgment. The jury was not provided special interrogatories. The court held a hearing on Plaintiffs' request for injunctive relief on August 4, 2014. However, because Plaintiffs failed to provide evidence regarding the cost that Defendants would incur in moving their private road, the court continued the hearing until December 17.

[¶7.]     At the subsequent hearing, Plaintiffs abandoned their request for an injunction ordering Defendants to move their road and instead asked the court to order Defendants to pay for preventive and corrective landscaping on Plaintiffs' property. The plan proposed by Plaintiffs involved removing a substantial amount of dirt from their pond (both deepening and widening it) and using the dirt to raise the elevation of their property's northwestern area in order to divert the water entering their property to the improved-capacity pond, preventing the water from pooling in the wetland area. Defendants presented testimony from Scott

Schweitzer, an engineer and hydrologist, who opined that Defendants had not made any alterations to their property that caused any change in the flow pattern or volume of water draining from Defendants' to Plaintiffs' property. Even so, the circuit court reasoned that the jury's verdict in favor of Plaintiffs established that Defendants had altered their property in some fashion that caused increased drainage. The court granted the injunction and ordered Defendants to pay an additional $28,936 to Plaintiffs.

[¶8.]     Defendants appeal, raising the following issues:

1.     Whether the circuit court erred by denying Defendants' requests for judgment as a matter of law.[2]

2.     Whether the circuit court erred in granting the injunction.

**Analysis and Decision**

[¶9.]     ***1.     Whether the circuit court erred by denying Defendants' requests for judgment as a matter of law.***

[¶10.]     Defendants argue that Plaintiffs "failed to produce any evidence on an essential element of a water diversion claim" and that Defendants were therefore entitled to judgment as a matter of law. Defendants contend "[t]here is no competent evidence offered by [Plaintiffs] to indicate that the water on [their] property is a result of a diversion implemented by [Defendants]." Additionally, Defendants point to the expert testimony of Noeske and Schweitzer, who both opined that there were no man-made alterations affecting the drainage from

---

2.     Plaintiffs argue in their reply brief that this issue is moot because Defendants voluntarily satisfied the judgment. Because we affirm on this first issue, however, it is unnecessary to address Plaintiffs' mootness argument.

Defendants' property. Thus, Defendants conclude that Plaintiffs have "produced no evidence and [have] not identified any device or alteration on [Defendants'] property that is altering the natural drainage or water flow."

[¶11.] This case provides an opportunity to reexamine the applicable standard of review on this issue. Many of our decisions state that we apply the abuse-of-discretion standard of review to a circuit court's grant or denial of a motion for judgment as a matter of law. *E.g.*, *Casper Lodging, LLC v. Akers*, 2015 S.D. 80, ¶ 29, 871 N.W.2d 477, 489; *Bertelsen v. Allstate Ins. Co.*, 2013 S.D. 44, ¶ 16, 833 N.W.2d 545, 554; *Christenson v. Bergeson*, 2004 S.D. 113, ¶ 10, 688 N.W.2d 421, 425. However, the majority of other courts have rejected the abuse-of-discretion standard in cases such as this. 9B Arthur R. Miller, *Federal Practice & Procedure* § 2536 (3d ed.), Westlaw (database updated April 2016). The United States Courts of Appeals unanimously apply the de novo standard.[3] Likewise, there is widespread agreement among the States' respective high courts that a lower court's decision to

---

3.  *See Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015); *Cir. Check Inc. v. QXQ Inc.*, 795 F.3d 1331, 1334 (Fed. Cir. 2015); *Radtke v. Lifecare Mgmt. Partners*, 795 F.3d 159, 163 (D.C. Cir. 2015); *Rhinehimer v. U.S. Bancorp Invs., Inc.*, 787 F.3d 797, 804 (6th Cir. 2015); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414 (7th Cir. 2015); *U.S. S.E.C. v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 813 (11th Cir. 2015); *Newton v. City of N.Y.*, 779 F.3d 140, 146 (2d Cir. 2015); *T G Plastics Trading Co., Inc. v. Toray Plastics (Am.), Inc.*, 775 F.3d 31, 37 (1st Cir. 2014); *Lee ex rel. Lee v. Borders*, 764 F.3d 966, 971 (8th Cir. 2014); *Durham v. Jones*, 737 F.3d 291, 298 (4th Cir. 2013); *Hagen v. City of Eugene*, 736 F.3d 1251, 1256 (9th Cir. 2013); *Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013); *Buskirk v. Apollo Metals*, 307 F.3d 160, 166 (3d Cir. 2002).

grant or deny judgment as a matter of law should be reviewed de novo.[4] The reason for this is that "[w]hether judgment as a matter of law should be granted is a question of law[,]" *id.*; *accord Thormahlen v. Foos*, 83 S.D. 558, 562, 163 N.W.2d 350, 352 (1968) ("A motion for directed verdict or judgment notwithstanding the verdict presents a question of law as to whether there is any evidence, if believed, sustaining the verdict against the moving party . . . ."),[5] which is reviewed de novo, *Pitt-Hart v. Sanford USD Med. Ctr.*, 2016 S.D. 33, ¶ 7, 878 N.W.2d 406, 409.

[¶12.]     Furthermore, although numerous opinions of this Court prescribe the abuse-of-discretion standard, it appears that these cases largely—if not entirely—

---

4.     *See Jones Food Co., Inc. v. Shipman*, 981 So. 2d 355, 360-61 (Ala. 2006); *City of Hooper Bay v. Bunyan*, 359 P.3d 972, 977 (Alaska 2015); *Glazer v. State*, 347 P.3d 1141, 1148 (Ariz. 2015); *Whittaker v. Houston*, 888 A.2d 219, 224 (Del. 2005); *Christensen v. Bowen*, 140 So. 3d 498, 501 (Fla. 2014); *Ray v. Kapiolani Med. Specialists*, 259 P.3d 569, 577 (Haw. 2011); *Griff, Inc. v. Curry Bean Co., Inc.*, 63 P.3d 441, 445 (Idaho 2003); *Krywin v. Chi. Transit Auth.*, 938 N.E.2d 440, 446 (Ill. 2010); *Siruta v. Siruta*, 348 P.3d 549, 558 (Kan. 2015); *Hall v. Folger Coffee Co.*, 874 So. 2d 90, 98-99 (La. 2004); *State v. Price-Rite Fuel, Inc.*, 24 A.3d 81, 85 (Me. 2011); *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 871 N.W.2d 136, 140 (Mich. 2015); *Isaac v. Vy Thanh Ho*, 825 N.W.2d 379, 383 (Minn. 2013); *Ill. Cent. R.R. Co. v. Brent*, 133 So. 3d 760, 767 (Miss. 2013); *Ellison v. Fry*, 437 S.W.3d 762, 768 (Mo. 2014) (en banc); *Barile v. Butte High Sch.*, 309 P.3d 1009, 1012 (Mont. 2013); *FGA, Inc. v. Giglio*, 278 P.3d 490, 500 (Nev. 2012); *McNeill v. Burlington Res. Oil & Gas Co.*, 182 P.3d 121, 130 (N.M. 2008); *Minto Grain, LLC v. Tibert*, 776 N.W.2d 549, 554-55 (N.D. 2009); *White v. Leimbach*, 959 N.E.2d 1033, 1038 (Ohio 2011); *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1092 (Okla. 2005); *O'Connell v. Walmsley*, 93 A.3d 60, 65-66 (R.I. 2014); *Lake v. Memphis Landsmen, LLC*, 405 S.W.3d 47, 67 (Tenn. 2013); *Vincent v. DeVries*, 72 A.3d 886, 890 (Vt. 2013); *Gomez v. Sauerwein*, 331 P.3d 19, 22 (Wash. 2014) (en banc); *Princeton Ins. Agency, Inc. v. Erie Ins. Co.*, 690 S.E.2d 587, 592 (W. Va. 2009); *Witherspoon v. Teton Laser Ctr., LLC*, 149 P.3d 715, 723 (Wyo. 2007).

5.     In 2006, the phrases *motion for directed verdict* and *motion for judgment notwithstanding the verdict* were changed to *motion for judgment as a matter of law* and *renewed motion for judgment as a matter of law*, respectively. 2006 S.D. Sess. Laws ch. 318 (Sup. Ct. Rule 06-44, -45).

derive from our decision in *Lytle v. Morgan*, 270 N.W.2d 359 (S.D. 1978) (per curiam).[6] One of the issues raised in that case was whether the circuit court erred by denying the plaintiff's motion for judgment as a matter of law. *Id.* at 360. In response to this issue, we said: "[I]t is well established that [circuit] court rulings and decisions are presumed to be correct and this [C]ourt will not seek reasons to reverse." *Id.* (citing *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251 (S.D. 1976), *overruled on other grounds by First Premier Bank v. Kolcraft Enters., Inc.*, 2004 S.D. 92, 686 N.W.2d 430; and *Custer Cty. Bd. of Educ. v. State Comm'n on Elementary & Secondary Educ.*, 86 S.D. 215, 193 N.W.2d 586 (1972)). However, the authorities cited in *Lytle* do not support this statement. Although in *Shaffer* we did say that "[t]he rulings of the trial court are presumptively correct[,]" this statement was made in regard to the circuit court's factual findings and evidentiary rulings. 249 N.W.2d at 257-58. Similarly, our statement in *Custer County Board of Education* that "[t]he rulings, decisions and judgments of a trial court are presumptively correct" also referred to the deference afforded to a circuit court's factual findings. 86 S.D. at 220-21, 193 N.W.2d at 589. Thus, *Lytle's* application of the abuse-of-discretion standard—as well as that of every other case that can be traced back to *Lytle*—is based on a misreading of two inapplicable cases.[7]

---

6.     For example, it appears that every case decided in the last five years involving the review of a circuit court's decision on a motion for judgment as a matter of law can be traced back to *Lytle*.

7.     In practice, even those cases prescribing the abuse-of-discretion standard— including *Lytle*—seem to conduct a de novo inquiry into whether the evidence, when viewed in a light most favorable to the nonmoving party, is sufficient to permit reasonable people to disagree on the merits. *See, e.g.,*

(continued . . .)

[¶13.] Finally, several concepts closely related to a motion for judgment as a matter of law are reviewed de novo. For example, the central question in both a motion for summary judgment and a motion for dismissal is whether a party is "entitled to judgment as a matter of law[.]" *Kustom Cycles, Inc. v. Bowyer*, 2014 S.D. 87, ¶ 8, 857 N.W.2d 401, 405. Our review of a court's decision regarding either of these motions is conducted de novo. *Id.* Furthermore, "'[t]he denial of a motion for judgment of acquittal presents a question of law' that we review de novo." *State v. Brim*, 2010 S.D. 74, ¶ 6, 789 N.W.2d 80, 83 (quoting *State v. Klaudt*, 2009 S.D. 71, ¶ 14, 772 N.W.2d 117, 122). Yet, there is no material distinction between a motion for judgment of acquittal (applicable in criminal cases) and a motion for judgment as a matter of law (applicable in civil cases).[8] Therefore, in order to maintain consistency among these related concepts, and in light of both the

---

(. . . continued)

> *Casper Lodging, LLC*, 2015 S.D. 80, ¶¶ 29-32, 871 N.W.2d at 489-90 ("From our review of the record, there is sufficient evidence to support the jury's verdict that Akers breached the parties' contract."); *Bertelsen*, 2013 S.D. 44, ¶¶ 16-20, 833 N.W.2d at 554-55 ("The evidence was sufficient to support the bad faith verdict."); *Lytle*, 270 N.W.2d at 361 ("We have examined the record in the light most favorable to defendant and *we find that there was substantial evidence* upon which reasonable minds could differ." (emphasis added)).

8. *Compare* SDCL 15-6-50(a) ("If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue."), *with* SDCL 23A-23-1 (Rule 29(a)) ("A court on motion of a defendant or on its own motion shall order the entry of judgment of acquittal of one or more offenses charged in an indictment or information after the evidence on either side is closed, if the evidence is insufficient to sustain a conviction of the offense or offenses.").

dearth of authority supporting application of the abuse-of-discretion standard and the wealth of authority supporting application of the de novo standard, we hold that a circuit court's decision to grant or deny a motion for judgment as a matter of law must be reviewed de novo on appeal.

[¶14.]     In light of the foregoing, we review de novo the question whether "there is no legally sufficient evidentiary basis for a reasonable jury to find" that Defendants caused water to invade Plaintiffs' property. SDCL 15-6-50(a). We apply "the same standard that the trial court was required to apply initially." *Minto Grain, LLC v. Tibert*, 776 N.W.2d 549, 555 (N.D. 2009) (quoting *Okken v. Okken*, 325 N.W.2d 264, 267 (N.D. 1982)); Miller, *supra* ¶ 11, § 2536. "In reviewing a renewed motion for judgment as a matter of law after the jury verdict, the evidence is reviewed 'in a light most favorable to the verdict or to the nonmoving party.'" *Alvine Family Ltd. P'ship v. Hagemann*, 2010 S.D. 28, ¶ 18, 780 N.W.2d 507, 512 (quoting *Harmon v. Washburn*, 2008 S.D. 42, ¶ 9, 751 N.W.2d 297, 300). "[W]ithout weighing the evidence, the court must [then] decide if there is evidence [that] . . . support[s] a verdict." *Id.* (quoting *Harmon*, 2008 S.D. 42, ¶ 9, 751 N.W.2d at 300). "If sufficient evidence exists so that reasonable minds could differ, judgment as a matter of law is not appropriate." *Bertelsen*, 2013 S.D. 44, ¶ 16, 833 N.W.2d at 554 (quoting *Roth v. Farner–Bocken Co.*, 2003 S.D. 80, ¶ 8, 667 N.W.2d 651, 659).

[¶15.]     Defendants' arguments on this issue amount to little more than an attempt to relitigate the trial. The owner of a dominant estate is permitted to drain water onto a servient estate "by means of a natural water course or established water course[.]" SDCL 46A-10A-20(4). Plaintiffs themselves provided testimony

sufficient for the jury to conclude Defendants had altered their land in such a way as to divert a greater-than-normal volume of water drainage onto Plaintiffs' property through a newly dug water course. Plaintiffs testified that they noticed significant water pooling on Defendants' property after both the June 2008 and June 2009 rain events. Plaintiffs explained that their property had no standing water after the June 2008 event, that their property initially had no standing water after the June 2009 event, that they witnessed water flowing down a trench running from Defendants' corrals toward Plaintiffs' property after the June 2009 event, and that their property subsequently flooded. Plaintiffs further testified that their property has suffered frequent flooding since Defendants installed their private drive. Finally, Plaintiffs also testified that instead of water pooling at the northwest corner of Defendants' property, water now runs south along the western side of the private drive, crosses underneath the drive through the culvert, runs down the southern slope of Defendants' property, and pools in the northwest corner of Plaintiffs' property.

[¶16.] Plaintiffs' testimony was sufficient to permit the jury to conclude Defendants caused the water invasion. Although Defendants' experts may have concluded that there was no evidence that the flooding resulted from Defendants' actions, we do not weigh the evidence in determining whether judgment as a matter of law is appropriate. *Alvine Family Ltd. P'ship*, 2010 S.D. 28, ¶ 18, 780 N.W.2d at 512. Even if we did, "[t]his state is not a trial-by-expert jurisdiction." *Bridge v. Karl's, Inc.*, 538 N.W.2d 521, 525 (S.D. 1995). "Fact finders are free to reasonably accept or reject all, part, or none of an expert's opinion." *O'Neill v. O'Neill*,

2016 S.D. 15, ¶ 17, 876 N.W.2d 486, 494 (quoting *Sauer v. Tiffany Laundry & Dry Cleaners*, 2001 S.D. 24, ¶ 14, 622 N.W.2d 741, 745). As the factfinder in this case, it was the jury's prerogative to believe Plaintiffs' testimony and give it greater weight than Defendants' evidence. Therefore, Defendants were not entitled to judgment as a matter of law, and the circuit court correctly denied Defendants' requests.

[¶17.]     ***2.     Whether the circuit court erred in granting the injunction.***

[¶18.]     The injunction issued by the circuit court consists of two parts. First, the court ordered Defendants to pay "$28,936 for costs, expenses, and taxes associated with . . . improvements or alterations to the Plaintiffs' property for the specific purpose to protect Plaintiffs' property from water runoff from the Defendants' property[.]" Second, the court also prohibited Defendants from making future alterations to their property.[9] We conclude that the circuit court was not authorized to issue the first part of the injunction and that the circuit court abused its discretion in issuing the second part of the injunction. We also take this opportunity to clarify the appropriate standard of review for the grant or denial of an injunction.

[¶19.]     We have often said that "[g]ranting or denying an injunction rests in the sound discretion of the trial court." *Hendrickson v. Wagners, Inc.*, 1999 S.D. 74, ¶ 14, 598 N.W.2d 507, 510 (quoting *Knodel v. Kassel Twp.*, 1998 S.D. 73, ¶ 6,

---

9.     The full text of this part of the injunction reads: "ORDERED that Defendants are prohibited from future alteration of this *Plaintiffs'* property that would adversely or unreasonably affect the natural flow of water, either in quantity or its direction of flow onto the Plaintiffs' property . . . ." (Emphasis added.) However, Plaintiffs' argument is that Defendants altered Defendants' property, not that Defendants altered Plaintiffs' property.

581 N.W.2d 504, 506). However, before reviewing whether the court abused its discretion in granting an injunction, we must first determine whether an injunction was statutorily authorized. A permanent injunction is authorized only under limited circumstances:

> Except where otherwise provided by this chapter, a permanent injunction may be granted to prevent the breach of an obligation existing in favor of the applicant:
>
> > (1) Where pecuniary compensation would not afford adequate relief;
> >
> > (2) Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief;
> >
> > (3) Where the restraint is necessary to prevent a multiplicity of judicial proceedings; or
> >
> > (4) Where the obligation arises from a trust.

SDCL 21-8-14. "The foundation of [this statute] rests in the probability of irreparable injury, the inadequacy of pecuniary compensation, and the prevention of a multiplicity of suits; and, where facts are not shown to bring the case within these conditions, the relief will be refused." *Beatty v. Smith*, 14 S.D. 24, 32, 84 N.W. 208, 211 (1900) (quoting James L. High, *Law of Injunctions* § 697). Whether the facts of a particular case meet these statutory prerequisites is a question of law. *See Faircloth v. Raven Indus., Inc.*, 2000 S.D. 158, ¶ 4, 620 N.W.2d 198, 200. Therefore, the question whether an injunction is statutorily authorized is reviewed de novo, and the court's subsequent decision to grant or deny the injunction is reviewed for an abuse of discretion. *Hendrickson*, 1999 S.D. 74, ¶ 14, 598 N.W.2d at 510.[10]

---

10. If SDCL 21-8-14 authorizes an injunction, the court's subsequent exercise of discretion is guided by several factors. For example, "the injury complained of [must] be irreparable[,]" and "it is essential that [the] plaintiff prove the

(continued . . .)

[¶20.]     The threshold question, then, is whether SDCL 21-8-14 authorized an injunction. In its conclusions of law, the court concluded both that pecuniary compensation would not afford Plaintiffs adequate relief (SDCL 21-8-14(1)) and that an injunction was necessary to avoid a multiplicity of suits (SDCL 21-8-14(3)). The court said:

> I find that absent an injunction, there would be irreparable harm that is not easily measured in damages and not easily—if you've got to sue every time to get your damages, that, to me, suggests irreparable harm if the injunction is not granted.
>
> . . . .
>
> [T]here would be irreparable—and by that I mean repetitive harm . . . .

However, both of these conclusions are defeated by Plaintiffs' evidence, and we conclude that SDCL 21-8-14 did not authorize the injunction in this case.

[¶21.]     First, the very nature of Plaintiffs' modified request for injunction undermines the conclusion that the harm was irreparable and not easily measured in damages. "Harm is irreparable 'where it cannot be readily, adequately, and completely compensated with money.'" *Strong v. Atlas Hydraulics, Inc.*, 2014 S.D. 69, ¶ 17, 855 N.W.2d 133, 140 (quoting *Knodel*, 1998 S.D. 73, ¶ 13, 581 N.W.2d at 509). Yet, the first part of the injunction simply ordered Defendants to pay money to Plaintiffs in the amount of "$28,936 for costs, expenses, and taxes

---

(. . . continued)
causative link between the actions of the defendant and the injury complained of." *Foley v. City of Yankton*, 89 S.D. 160, 165, 230 N.W.2d 476, 479 (1975). An injunction should be denied "where the expense or hardship to be suffered by the defendant is disproportionate to the small benefit to be gained by the injured party" unless "the actions of the defendant were taken willfully and with full knowledge of plaintiff's rights and the [consequences] which might ensue." *Id.* at 166, 230 N.W.2d at 479.

associated with . . . improvements or alterations to the Plaintiffs' property for the specific purpose to protect Plaintiffs' property from water runoff from the Defendants' property[.]" Because prospective damages may be measured by determining the reasonable and necessary cost of preventing future injury, *City of Jackson v. Keane*, 502 So. 2d 1185, 1188 (Miss. 1987); Restatement (Second) of Torts § 930(3)(b) (Am. Law Inst. 1979), Plaintiffs could have simply sought this amount as future damages at the same time they sought the $55,000 for past damages, *Peacock v. Sundre Twp.*, 372 N.W.2d 877, 879 (N.D. 1985) ("When . . . an election is made [to seek a single recovery for all past and future damage], all damages for past and future injury to the property may be aggregated and recovered at once, and one such recovery is a bar to all subsequent actions for damages."); Restatement (Second) of Torts § 930. In reality, then, the first part of the injunction is no more than a simple money judgment for future damages imposed on Defendants by substituting the court's coercive power for a jury verdict.[11] Therefore, we disagree with the circuit court that pecuniary compensation would not have afforded Plaintiffs adequate relief in this case.

---

11. Courts generally do not "compel money payments by injunctive orders except in very special cases. Instead, a *judgment* is rendered for most ordinary money judgments." Dan B. Dobbs, *Law of Remedies* § 2.6(1), p. 103-04 (2d ed. 1993). This general rule is true because "[a]n essential element to equitable relief is the lack of an adequate remedy at law." *Knodel*, 1998 S.D. 73, ¶ 8, 581 N.W.2d at 507. If a plaintiff's grievance can be adequately remedied by receipt of a judge-ordered sum of money, then a jury-awarded sum of money is also likely a sufficient remedy. Consequently, while "[t]he law–equity distinction does not prevent injunctions to require money payments, . . . good sense or caution will often do so." Dobbs, *supra*, § 2.6(1), p. 104.

[¶22.]     Next, the court concluded that the injunction was necessary to prevent multiple lawsuits. We have said that "[a] trip to the courthouse to settle a legal dispute should be dispositive and not an annual event." *Hendrickson*, 1999 S.D. 74, ¶ 24, 598 N.W.2d at 512. Thus, "a trespass of a continuing nature, whose constant recurrence renders the remedy at law inadequate, unless by a multiplicity of suits, affords sufficient ground for relief by injunction." *Beatty*, 14 S.D. at 32, 84 N.W. at 211 (quoting High, *supra*, § 697). However, the question is not whether an injunction *can* prevent multiple judicial proceedings; the question is whether the injunction is *necessary* to do so. SDCL 21-8-14(3). As discussed in the preceding paragraph, the facts of this case establish that Plaintiffs could have avoided future litigation by seeking compensation for past and future damages in one action. The fact that they chose not to do so does not render an injunction *necessary* to prevent multiple suits. Therefore, because none of the four circumstances listed in SDCL 21-8-14 have been met,[12] an injunction ordering Defendants to pay $28,936 to Plaintiffs was not statutorily authorized in this case.

[¶23.]     The second half of the injunction is also problematic. It states, in part: "Defendants are prohibited from *future* alteration of this Plaintiffs' [sic] property . . . ." (Emphasis added.) By its express terms, then, the second half of the injunction is unrelated to any existing alteration alleged by Plaintiffs. However, the

---

12.    Plaintiffs asserted that the cost of preventing future damage was $28,936, and Defendants did not dispute that amount. Therefore, this is not a case "[w]here it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief[.]" SDCL 21-8-14(2). Because this case does not involve an obligation arising from a trust, SDCL 21-8-14(4) is also inapplicable.

circuit court's findings of fact and conclusions of law do not address the likelihood of future alterations to Defendants' (or Plaintiffs') property (they only address future *damage* resulting from *existing* alterations). Thus, it does not appear that the circuit court considered the question whether SDCL 21-8-14 authorized the second half of the injunction. Therefore, we remand to the circuit court to consider this threshold question.

[¶24.] If on remand the circuit court concludes that SDCL 21-8-14 authorized the second part of the injunction, the court should be aware of an additional problem with the injunction as written. The circuit court attempted to prohibit Defendants from any future alterations to their property that would "adversely *or* unreasonably affect the natural flow of water, either in quantity or its direction of flow onto the Plaintiffs' property[.]" (Emphasis added.) The circuit court's use of the disjunctive conjunction *or* indicates that Plaintiffs would be protected under the injunction from even reasonably adverse alterations in drainage. However, within certain restrictions, the owner of a dominant estate is generally entitled to drain onto a servient estate. *Hendrickson*, 1999 S.D. 74, ¶ 11, 598 N.W.2d at 510. There is no requirement that the dominant property refrain from all draining that is adverse to the servient property; rather, drainage must not create "*unreasonable* hardship or injury to the owner of the land receiving the drainage[.]" *Id.* (emphasis added) (quoting SDCL 46A-10A-20(3)). Thus, the injunction would leave Plaintiffs in a better position than they are entitled to be under South Dakota's drainage laws. Therefore, the second half of the injunction—as written—is overbroad and an abuse of discretion.

**Conclusion**

[¶25.] Plaintiffs introduced evidence that Defendants drained water onto Plaintiffs' property by way of a water course that was neither natural nor established. Therefore, Defendants were not entitled to judgment as a matter of law, and the circuit court did not err in denying Defendants' requests for the same. However, the injunction issued by the court was improper. The circumstances of this case demonstrate that Plaintiffs had an adequate remedy at law for their anticipated future damages and that they could have avoided future litigation by pursuing that remedy. Therefore, SDCL 21-8-14 did not authorize the first half of the injunction. The court did not determine whether SDCL 21-8-14 authorized the second half of the injunction. Even if it did, the second half of the injunction is overbroad and an abuse of discretion. Therefore, we affirm the court's denial of Defendants' requests for judgment as a matter of law, but we reverse the court's grant of injunction and remand for a determination whether SDCL 21-8-14 authorized the future-alterations portion of the injunction.[13]

[¶26.] ZINTER, SEVERSON, WILBUR, and KERN, Justices, concur.

---

13. Plaintiffs request reimbursement of appellate attorney fees. SDCL 15-26A-87.3 permits us to grant appellate attorney fees "only where such fees are permissible at the trial level." *Grynberg Expl. Corp. v. Puckett*, 2004 S.D. 77, ¶ 33, 682 N.W.2d 317, 324 (quoting *Hentz v. City of Spearfish, Dep't of Pub. Works, Office of Planning & Zoning*, 2002 S.D. 74, ¶ 13, 648 N.W.2d 338, 342). However, Plaintiffs have not attempted to explain why they are entitled to appellate attorney fees. Therefore, their request is waived. SDCL 15-26A-60(6); *Veith v. O'Brien*, 2007 S.D. 88, ¶ 50, 739 N.W.2d 15, 29.